# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| FLEMING, INGRAM & FLOYD, P.C., JOHN FLEMING, and WILLIAM M. FLEMING, | * * * * |
| Plaintiffs/Defendants in Counterclaim, | * * * |
| vs. | * CV 108-075 * |
| CLARENDON NATIONAL INSURANCE COMPANY and ROYAL SURPLUS LINES INSURANCE COMPANY, | * * * * |
| Defendants/Plaintiffs in Counterclaim, | * * * |
| vs. | * * |
| WENDELL A. JENIFER, | * * |
| Plaintiff/Defendant in Counterclaim | * * |

## ORDER

Plaintiffs/Defendants in Counterclaim Fleming, Ingram & Floyd, P.C., John Fleming, and William M. Fleming filed this declaratory judgment action in the Superior Court of Richmond County, Georgia on May 7, 2008. Defendants/Plaintiffs in Counterclaim removed the action to federal court on June 11, 2008, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446. Plaintiffs/Defendants in Counterclaim ("Plaintiffs") seek a declaration of the Parties' rights under the professional liability insurance policies issued by Clarendon National Insurance Company and Royal Surplus Lines Insurance Company

to Fleming, Ingram & Floyd, P.C., John Fleming, and William M. Fleming. Specifically, Plaintiffs seek a declaration of coverage under the policies with respect to a legal malpractice claim filed against Fleming, Ingram & Floyd, P.C., John Fleming, and William M. Fleming by their former client, Plaintiff/Defendant in Counterclaim Wendell Jenifer.

Defendant/Plaintiff in Counterclaim Arrowood Surplus Lines Insurance Company f/k/a Royal Surplus Lines Insurance Company ("Arrowood") filed a Motion for Summary Judgment against Fleming, Ingram & Floyd, P.C., and John Fleming denying any coverage obligations with respect to the Jenifer claim. (Dkt. No. 64.) Arrowood filed a separate yet similar Motion against William M. Fleming.[1] (Dkt. No. 66.) The Court **GRANTS** both of Arrowood's Motions for Summary Judgment. (Dkt. Nos. 64, 66.)

## BACKGROUND

For several years, Clarendon National Insurance Company ("Clarendon") provided the law firm of Fleming, Ingram & Floyd, P.C, and its predecessor firms (collectively "Fleming Ingram") with professional liability insurance coverage. In January of 2002, Fleming Ingram submitted an application to renew its coverage, and Clarendon issued a renewal policy for the period of March 13, 2002 through March 13, 2003. (Ingram Dep. 21-24.)

---

[1] Defendant/Plaintiff in Counterclaim Clarendon National Insurance Company also filed its own Motion for Summary Judgment against Fleming, Ingram & Floyd, P.C., John Fleming, and William M. Fleming. (Dkt. No. 68.)

2

In March of 2002, Richard Ingram, a partner with the Fleming Ingram firm, learned that the statute of limitations had lapsed in a personal injury case handled by the firm. (Ingram Dep. 31-32.) This discovery prompted Ingram to conduct a thorough review of the firm's case files. All told, Ingram's audit revealed approximately thirty files involving potential malpractice, including twelve files that Ingram concluded "were definitely a problem." (Id. at 35-36, 108.)

One potential problem Ingram discovered in his file review involved the firm's representation of Wendell Jenifer. (Id. at 108.) Jenifer retained the Fleming Ingram firm to represent him in a personal injury lawsuit after he allegedly slipped and fell at a hotel in Augusta, Georgia. The associate primarily responsible for handling Jenifer's case, William M. Fleming, III, failed to name the correct defendant in the complaint filed on Jenifer's behalf: Fleming filed suit against Sunset Inn, Inc., not the entity that owned and operated the Sunset Inn in Augusta. (Dkt. No. 64 Ex. D.) Although Sunset Inn, Inc.'s answer to the complaint put Fleming on notice of his mistake, he never amended the pleading to cure the problem. (Dkt. No. 64 Ex. I.) Summary judgment was eventually granted against Jenifer; the reasons for and causes of that judgment form the basis of a separate suit pending before this Court. (See CV 106-139.)

Shortly after the audit, Ingram called Laura Simon, a supervisor at Lawyers Protector Plan ("LPP"), to report his findings. (Ingram Dep. 39-40.) LPP is the managing general agent for Clarendon.[2] (Simon Dep. 5, 51.) In June of 2002, Clarendon

---

[2] LPP, a division of B&B Protector Plans, Inc., provides professional liability insurance coverage. From approximately 1999 to 2004, LPP partnered with Clarendon to underwrite its policies. (Simon Dep. 5, 50-51.) It is undisputed that Ingram's communications with LPP constituted communications with Clarendon and that LPP had the authority to act and

3

informed Fleming Ingram that its professional liability insurance policy would be cancelled effective August 29, 2002, due to the material change in risk associated with the firm. (Dkt. No. 68 Ex. E.)

In August 2002, with the help of the Carraway, Cohen & Channell insurance agency ("the Carraway Agency"), Fleming Ingram completed an application to purchase new professional liability insurance coverage through a surplus lines insurance carrier.[3] (Allen Dep. 46-47, 82-83.) Although several other carriers declined to extend coverage, Arrowood issued a claims-made policy covering Fleming Ingram for the policy period of August 29, 2002 to August 29, 2003, and a separate policy covering William M. Fleming, III[4] for the policy period of September 3, 2002 to September 3, 2003 (collectively "the Royal Policies"). The Royal Policies provided, in part, that Arrowood would pay

> on behalf of the Insured . . . all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, or **Personal Injury** . . . in the rendering of or failure to render professional services as a Lawyer, provided that:
> 1. The Claim is first made against the Insured and *reported to the Company* during the **Policy Period**, but not later than 60 days after the end of the **Policy Period**. . . .

(Dkt. No. 100 Exs. N, O (italic emphasis added).)

---

speak on behalf of Clarendon. (See Clarendon Br. Supp. Summ. J. 3 n.3.)

[3] Surplus lines insurance is "[i]nsurance with an insurer that is not licensed to transact business within the state where the risk is located." Black's Law Dictionary 819 (8th ed. 2004). Surplus lines coverage is typically obtained for high-risk insureds that have difficulty obtaining coverage through standard markets. (Allen Dep. 83.)

[4] Fleming resigned as an associate with the Fleming Ingram firm on September 1, 2002. (Allen Dep. 82; Ingram Dep. 99-100.)

On September 27, 2002, Ingram sent LPP a written communication detailing the potential malpractice involved in the handling of the Jenifer matter. (Dkt. No. 68 Ex. N.) Ingram did not send a copy of this communication to Arrowood. (Ingram Dep. 179.)

On September 8, 2006, Jenifer filed a legal malpractice lawsuit against the Fleming Ingram firm. (See Dkt. No. 1 Ex. A.) Arrowood denies owing any insurance coverage obligations to the firm based on Jenifer's cause of action. Arrowood argues that no claims arising out of the firm's negligent representation of Jenifer were reported to Arrowood during the effective dates of the Royal Policies.[5] Accordingly, Arrowood moves for summary judgment on Plaintiffs' Complaint for declaratory judgment. (Dkt. Nos. 64, 66.)

## DISCUSSION

Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

---

[5] Hereafter, "the effective dates of the Royal Policies" means August 29, 2002 through August 29, 2003, plus a 60-day extension, for the policy covering the Fleming Ingram law firm, and September 3, 2002 through September 3, 2003, plus a 60-day extension, for the policy covering William M. Fleming, III.

If the movant meets its burden under Rule 56(c), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Matsushita, 475 U.S. at 587. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

Arrowood argues that it is entitled to summary judgment because Fleming Ingram did not report the Jenifer claim to Arrowood during the effective dates of the Royal Policies. The Royal Policies are "claims-made" policies: under Georgia law, a claims-made policy's coverage is only effective if a negligent act, error, or omission is "discovered and brought to the attention of the insurer within the policy term." Serrmi Prods., Inc. v. Ins. Co. of Pa., 201 Ga. App. 414, 414, 411 S.E.2d 305 (1991) (quoting Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So.2d 512, 514 (Fla. 1983)).

In Serrmi, the Insurance Company of Pennsylvania issued a claims-made liability insurance policy to Serrmi Products, Inc. 201 Ga. App. at 414. The policy provided coverage for one year, as well as a 60-day "automatic limited Extended Reporting Period." Id. Serrmi sought coverage under the policy after a particular claim was made against the company. However, because the claim was not reported to the insurer within the policy period or the 60-day extended reporting period, the insurer denied coverage.

Id. Serrmi filed an action seeking a declaration that it was afforded coverage for the claim under the policy, but the trial court granted summary judgment to the insurer. Id.

On appeal, the Georgia Court of Appeals affirmed the trial court's ruling. Id. at 415. The court found that under the unambiguous terms of the policy, the reporting requirement was essential to coverage. Id.

> If a court were to excuse the insured from the reporting requirement or allow an extension of reporting time after the end of the policy period and any extended reporting period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained.

Id. (internal brackets omitted). Thus, the "essence" of a claims-made policy "is notice to an insurer within the policy period." Resolution Trust Corp. v. Artley, 24 F.3d 1363, 1367 (11th Cir. 1994).

The Royal Policies state that Arrowood will only be obligated to pay on behalf of the insured if a "Claim is first made against the Insured and reported to the Company during the Policy Period." (Dkt. No. 100 Exs. N, O.) Thus, notice to the insurer is a condition precedent to coverage under the Royal Policies. To survive summary judgment, Plaintiffs must present evidence establishing a genuine issue of fact as to whether the Jenifer claim was reported to Arrowood within the effective dates of the Royal Policies.

Plaintiffs allege two routes by which Arrowood received timely notice of the Jenifer claim. First, Plaintiffs suggest that Ingram's September 27, 2002 letter to LPP put Arrowood on notice of the Jenifer claim, either directly or through a surplus lines broker acting as Arrowood's agent. However, Plaintiffs are unable to point to any specific

7

evidence as the basis for this allegation. Ingram admits that the letter was not addressed to Arrowood and that Arrowood was not copied on the letter. (Ingram Dep. 179.) Moreover, there is no evidence that the letter was ever communicated to an agent or surplus lines broker acting on Arrowood's behalf. Plaintiffs do not even identify the surplus lines broker that they allege may have communicated notice of the Jenifer claim to Arrowood. Thus, Plaintiffs have produced insufficient evidence to support a finding that Ingram's letter put Arrowood on notice of the Jenifer claim. The "mere allegation[]" that Ingram's letter somehow communicated timely notice to Arrowood is not sufficient to survive summary judgment. Fed. R. Civ. P. 56(e); see also Matsushita, 475 U.S. at 586-87. Speculation and conjecture are not enough to establish a genuine issue of material fact. See Lee v. Celotex Corp., 764 F.2d 1489, 1492 (11th Cir. 1985).

Second, Plaintiffs contend that there is a genuine issue of fact regarding Arrowood's notice of Jenifer's professional malpractice claim because there is evidence that Ingram communicated timely notice of the claim to the Carraway Agency. The Parties dispute whether Ingram actually discussed the Jenifer matter with anyone at the Carraway Agency during the effective dates of the Royal Policies. However, even if the Carraway Agency did receive notice of the Jenifer claim within the effective dates, Plaintiffs have proffered no evidence to suggest that the Carraway Agency was an actual or apparent agent of Arrowood under Georgia law, such that the Carraway Agency's alleged notice may be imputed to Arrowood.

There is no dispute that the Carraway Agency is an independent insurance agent that contracts with multiple insurance carriers. (Carraway Dep. 12-13.) Independent

insurance agents are generally considered agents of the insured under Georgia law, and not agents of the insurer. Se. Express Sys. v. S. Guar. Ins. Co. of Ga., 224 Ga. App. 697, 700, 482 S.E.2d 433 (1997). However, an insurer can place an independent insurance agent "in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice of an occurrence or claim." Kay-Lex Co. v. Essex Ins. Co., 286 Ga. App. 484, 489, 649 S.E.2d 602 (2007).

In Bowen Tree Surgeons, Inc. v. Canal Indem. Co., 264 Ga. App. 520, 591 S.E.2d 415 (2003), the Georgia Court of Appeals confronted evidence that, when viewed in the light most favorable to the insured, suggested the insurer placed an independent insurance agent in a position of apparent authority to receive notice on its behalf. Bowen Tree Surgeons purchased a general liability policy with Canal Indemnity Company through Yeomans & Associates Agency, an independent insurance agent. Subsequently, one of Bowen's employees was involved in an automobile accident, and the driver of the other car sued Bowen. Id. at 521. Bowen reported notice of the lawsuit to a Yeomans employee who told Bowen that "she would handle the matter." Id. Based on this assurance, Bowen did not answer the lawsuit, and a default judgment was entered against the company. Canal did not receive notice of the suit until the default judgment was entered.

Bowen sued Canal, arguing that the insurer was obligated to defend the lawsuit and provide insurance coverage. Canal moved for summary judgment and the trial court granted the motion, concluding that "as a matter of law, Bowen had failed to prove that

9

Yeomans was an agent of Canal and that Canal had never been properly notified of the suit." Id. at 521-22.

The Georgia Court of Appeals reversed because it found that a genuine issue of fact remained regarding the relationship between Yeomans and Canal. Id. at 520. Evidence was presented that Yeomans customarily accepted premium payments and notices of claims on Canal's behalf, and that Canal never objected to this practice. Id. at 522. Based on this evidence, the court reasoned that a factfinder could rationally conclude that "by allowing this custom and initiating reliance on the insurance agency, the insurer, in turn, vest[ed] the insurance agency with certain authority on its behalf." Id.

In contrast, the Georgia Court of Appeals found no evidence suggesting that the insurer in Kay-Lex vested an independent insurance agent with authority to receive notice on its behalf. 286 Ga. App. at 489-90. Kay-Lex never notified its insurer of an accident that occurred at its warehouse, despite a provision in the insurance policy that expressly required the insured to report any potential claims to the insurer "as soon as practicable." Id. at 488. Instead, Kay-Lex reported the accident to its insurance agent, who told Kay-Lex that he "would take care of it." Id. at 487-88. The insurer did not receive notice of the accident until the injured worker's attorney sent a demand letter to the company almost one year after the accident. Id. at 489. The insurer denied coverage because Kay-Lex had failed to provide timely notice of the claim. Id. at 487.

The insurer filed a declaratory judgment action. Id. at 484. On summary judgment, Kay-Lex argued that notice to its insurance agent, along with the agent's

statement that he "would take care of it," created an issue of fact as to whether the insurer received timely notice of the accident. Id. at 488. Based on the evidence, the court disagreed. The court pointed out that "neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer." Id. at 489. The policy "required notice to [the insurer]; it did not provide for notice to any agent." Id. The court also noted the absence of any evidence of conduct on the part of the insurer or the independent agent establishing an apparent agency relationship between the parties. Id. at 489. Unlike in Bowen, there was no evidence that the agent customarily received notice on behalf of the insurer, or that the insurer otherwise placed the agent in a "position of apparent authority." Id.

Here, as in Kay-Lex, Plaintiffs have not proffered any evidence showing that Arrowood ever held out the Carraway Agency as its agent, "such that [Plaintiffs] might be justified in assuming that the [Carraway Agency] had authority to receive notice of an occurrence or claim." Id. at 489. Unlike in Bowen, there is not sufficient evidence to show that the Carraway Agency "customarily accepted premiums and notices of claims" on Arrowood's behalf.[6] 264 Ga. App. at 522. Moreover, neither the language of the

---

[6] Ingram deposed that the check used to pay for the Royal Policies was most likely made out to the Carraway Agency. (Ingram Dep. 216-17.) However, unlike the independent insurance agent in Bowen, there is no indication that the Carraway Agency routinely collected premium payments on behalf of Royal. See Alea London Ltd. v. Cook, No. 4:06-CV-0238-HLM, 2007 WL 5376619, at *13, (N.D. Ga. Sept. 19, 2007) (finding that insurance agent's "one-time acceptance" of check from insured adding an additional insured to policy was not "sufficient to create a genuine dispute as to whether an agency relationship existed between" the insurance agent and the insurer). Moreover, there is no evidence suggesting that the Carraway Agency ever received notice of claims on behalf of Arrowood.

11

Royal Policies nor anything stamped on the face of the Policies indicates that Arrowood gave the Carraway Agency authority to receive notice of claims on its behalf. Rather, the Royal Policies state that Arrowood will only be obligated to provide coverage on a claim if "[t]he Claim is first made against the Insured and *reported to the Company* during the Policy Period." (Dkt. No. 100 Exs. N, O (emphasis added).)

Because Plaintiffs have produced insufficient evidence to create a genuine dispute as to the existence of an agency relationship between Arrowood and the Carraway Agency, any notice of the potential Jenifer claim that the agency may have received within the effective dates of the Royal Policies cannot be imputed to Arrowood.[7] Further, as discussed above, Plaintiffs have not proffered any evidence substantiating their allegations that Arrowood received notice of the claim via Ingram's September 27, 2002 letter. Thus, Plaintiffs have not established a genuine issue of fact as to whether the Jenifer claim was made and reported to Arrowood as required by the Royal Policies. Without receipt of the requisite notice, as a matter of law, Arrowood owes no coverage obligations with respect to the Jenifer claim to either the Fleming Ingram firm or William M. Fleming.

The Court therefore **GRANTS** Arrowood's Motions for Summary Judgment. (Dkt. Nos. 64, 66.)

---

[7] Plaintiffs' argument that Ingram considered the Carraway Agency an agent of Arrowood does not change the analysis. (Ingram Dep. 216, 247.) While Ingram may have relied on the existence of an agency relationship between Arrowood and the Carraway Agency, there is not sufficient evidence that his reliance was justifiable. See Pope v. Mercury Indem. Co. of Ga., 297 Ga. App 535, 541, 677 S.E.2d 693 (2009) (requiring evidence of justifiable reliance on representation of agency to show genuine issue of fact as to existence of apparent agency relationship).

## CONCLUSION

Arrowood's Motion for Summary Judgment against Fleming, Ingram & Floyd, P.C., and John Fleming is **GRANTED**. (Dkt. No. 64.) Arrowood's Motion for Summary judgment against William M. Fleming is also **GRANTED**. (Dkt. No. 66.)

**SO ORDERED,** this 29th day of November, 2009.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA