# In the United States District Court
# for the Southern District of Georgia
# Augusta Division

| | |
|---|---|
| FLEMING, INGRAM & FLOYD, P.C., JOHN FLEMING, WILLIAM M. FLEMING, and WENDELL A. JENIFER, <br><br> Plaintiffs, <br><br> vs. <br><br> CLARENDON NATIONAL INSURANCE COMPANY, <br><br> Defendant. | CV 108-075 |

## ORDER

Presently before the Court is Defendant Clarendon National Insurance Company's Renewed Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial. Upon due consideration, Defendant's motion is **DENIED**.

## BACKGROUND

Defendant Clarendon National Insurance Company provided Plaintiff Fleming, Ingram & Floyd, P.C. (the "Firm"), with professional liability coverage for the policy period of March 13, 2002, to March 12, 2003. Under the terms of the policy, Clarendon agreed

to pay on behalf of the Insured all sums in excess of
the deductible that the Insured shall become legally
obligated to pay as damages and claim expenses because
of a claim that is both first made against the Insured
and reported in writing to the Company during the
policy period by reason of an act or omission in the
performance of legal services by the Insured or by any
person for whom the Insured is legally liable . . .

Dkt. No. 68, Ex. B. The Policy also provides coverage for claims made against the Firm outside of the policy period, so long as the "potential claim" was first reported to Clarendon during the policy period:

If during the policy period the Insured shall become
aware of any act or omission that may reasonably be
expected to be the basis of a claim against the
Insured and gives written notice to the Company of
such act or omission and the reason for anticipating a
claim, with full particulars, . . . then any such
claim that is subsequently made against the Insured
and reported to the Company shall be deemed to have
been made at the time such written notice was given to
the Company.

Id.

In March 2002, Richard Ingram, a partner with the Firm, conducted a review of the Firm's case files and discovered a number of case files involving potential malpractice. One of those files included the Firm's representation of Wendell Jenifer in a personal injury lawsuit against a hotel. An associate with the Firm, William M. Fleming, III, handled the Jenifer matter but had failed to sue the proper defendant in the case and had further failed to correct his mistake in a timely manner, as required by Georgia law. See Dkt. No. 68, Ex. N.

2

AO 72A
(Rev. 8/82)

On or about March 25, 2002, Ingram called Laura Simon, a policy supervisor associated with Clarendon,[1] to discuss the instances of potential malpractice that Ingram uncovered, including the Jenifer matter. During that conversation, Simon told Ingram that there was no need to provide Clarendon with written notice of the potential Jenifer malpractice claim at that time. See Trial Tr. vol. 1, 54, June 7, 2010.

In June of 2002, Clarendon informed the Firm that its professional liability insurance policy would be cancelled effective August 29, 2002. The Firm subsequently purchased a one-year extended reporting period, which gave the Firm one year "after the end of the policy period [August 29, 2002] for reporting claims by reason of an act or omission that occurred prior to the end of the policy period and is otherwise covered by [the Clarendon policy]." Dkt. No. 68, Ex. B.

On September 23, 2002, Ingram met with Jenifer to discuss the possible acts of professional negligence involved in his personal injury case and informed Jenifer that dismissal of the case was a possibility. According to Ingram, Jenifer asked whether he would receive money from his lawsuit. Ingram responded, "Either your case is going to survive through court, or you're going to get it from our malpractice carrier should the Judge throw it out . . . One of those ways, you're going to

---

[1] The parties do not dispute that communications with Simon constitute communications with Clarendon.

recover." Trial Tr. vol 1, 60, June 7, 2010. Several days later on September 27, 2002, Ingram wrote a letter to Clarendon describing the Jenifer matter and concluding, "this may be a claim." Dkt. No. 68, Ex. N. The Jenifer personal injury lawsuit was dismissed on March 18, 2003.

On September 8, 2006, Jenifer filed a legal malpractice suit against the Firm. Clarendon denied coverage, citing the Firm's alleged failure to properly notify Clarendon of Jenifer's claim. The Firm filed a lawsuit against Clarendon, which eventually proceeded to trial, seeking a declaration of coverage under the Policy. At trial, the jury returned a verdict in favor of the Firm. Clarendon now brings a renewed motion for judgment as a matter of law or, alternatively, motion for new trial.

**LEGAL STANDARD**

A post-verdict motion for judgment as a matter of law "cannot be granted if reasonable and fair-minded people in the exercise of impartial judgment might reach a different conclusion from the evidence at trial." Neptune Equities, Inc. v. Bearden Oil Co., Inc., 275 F. App'x 824, 826 (11th Cir. 2008)(citing Walls v. Button Gwinnett Bancorp, Inc., 1 F.3d 1198, 1200 (11th Cir. 1993)). In considering a motion for judgment as a matter of law, courts must "evaluate all the evidence, together with any logical inferences, in the light

AO 72A
(Rev. 8/82)

4

most favorable to the non-moving party." Id. (citing Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997)).

With regard to a motion for a new trial, a court must determine if "the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)(quoting United States v. Bucon Constr. Co., 430 F.2d 420, 423 (5th Cir. 1970)).

**DISCUSSION**

    i.    **The Policy's Notice Requirements**

Section V.A.1 of the Policy requires immediate written notice of actual claims made during the policy period as a condition of coverage. Dkt. No. 68, Ex. B. Section V.A.2 provides coverage for actual claims made after the expiration of the policy period where: (1) the insured provided written notice – during the policy period – of the circumstances surrounding the then-potential claim and (2) the actual claim is subsequently "reported to" Clarendon. Id.

Because the actual claim arose after the expiration of the policy period, Section V.A.2 applies in this case.[2] Accordingly, the issues before the Court are whether: (1) the Firm provided adequate notice of the potential claim during the policy period, and (2) the Firm "reported to" Clarendon that an actual claim subsequently arose.

### ii. Notice of the Potential Claim

As explained, section V.A.2. requires that insured parties provide "written notice to [Clarendon]" of the circumstances surrounding a potential claim. However, according to Ingram's testimony, Ingram called Simon to discuss the Jenifer claim in March 2002, and during that discussion, Simon told Ingram not to send written notice of the claim at that point. Trial Tr. vol 1, 54, June 7, 2010.

A reasonable jury could reach two conclusions as a result of Ingram's testimony: (1) that Clarendon, through Simon, waived the requirements of a detailed, written notice of the then-potential Jenifer claim, and (2) that in light of the waiver, Ingram's conversation with Simon constituted adequate notice of the then-potential Jenifer claim under section V.A.2.

---

[2] On August 23, 2002, the Firm purchased an "extended reporting period," which the Policy defines as "the period of time after the end of the policy period for reporting claims by reason of an act or omission that occurred prior to the end of the policy period . . ." Dkt. No. 63, Ex. B. As the Policy's definition makes clear, the "extended reporting period" allows the insured to keep reporting claims but is nonetheless distinct from the policy period itself. The policy period expired on August 29, 2002, and the earliest possible actual claim - that either party alleges - arose on September 23, 2002.

### iii. The Report Requirement

In addition to the notice requirement for the potential claim, section V.A.2 requires that the insured "report[] to" Clarendon when the potential claim subsequently becomes an actual claim. Thus, the issues here are (1) when the potential claim became an actual claim and (2) whether the Firm reported the actual claim to Clarendon in accordance with section V.A.2.

Section III.C of the Policy defines a claim as "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." Dkt. No. 68, Ex. B. Plaintiff argues that an actual claim arose on September 23, 2002, during a conversation between Ingram and Jenifer. According to Ingram's testimony, Jenifer, in the course of that conversation, "made it clear [] that he was either going to get his opportunity to go to court, or if that failed due to the error that was made, that he would get money from [the Firm's] malpractice carrier." Tr. Testimony, 86, June 7, 2010. To the extent Jenifer conditions his demand for money from the Firm's malpractice carrier on his case being dismissed, Jenifer's demand appears to be a potential claim. Nonetheless, by the time of the meeting, it was highly unlikely that Jenifer's lawsuit would go forward in court in light of the Firm's mishandling of the case. See Dkt. No. 68, Ex. N. Jenifer's statement,

7

therefore, that "he would get money" from the Firm's malpractice carrier in the event of dismissal - which seemed all but certain - could, in effect, constitute a demand under the Policy. Indeed, Defense counsel recognizes that "according to the evidence, the claim was made on September 23rd, 2002." Hr'g Tr. 22, Aug. 18, 2010. A reasonable jury thus could have concluded that an actual claim arose on September 23, 2002.

A reasonable jury could also have found that Ingram's September 27, 2002 letter to Simon constituted a "report[] to" Clarendon. Defendant concedes that the report requirement is not defined in the Policy. Dkt. No. 207, at 8. Defendant argues that an ordinary understanding of "reported" governs, such that the insured is required "to give an account of, to relate[], to tell, to convey or disseminate information" concerning the actual claim. Id. In the September 27 letter, Ingram states that he met with Jenifer regarding his personal injury lawsuit. See Dkt No. 68, Ex. N. Ingram also gives a detailed description of the Firm's mishandling of the suit and explains that the statute of limitations for the suit has likely run under Georgia law because over a year had passed since Fleming had become aware that he had mistakenly served the wrong defendant. Id. Finally, Ingram concludes that "this may be a claim," although the court had not yet dismissed the lawsuit. Id.

8

As Defendant notes, Ingram's letter does not explicitly state that Jenifer had made an actual "demand for money or services" to the Firm. Dkt. 195, at 10. Because there is no explicit statement that Jenifer had made a claim, Defendant argues that the "letter does not provide any notice of a claim." Id. at 11. Two major considerations, however, undermine Defendant's argument in the context of the motion currently under review. First, what the Policy's report provision actually requires is unclear because the Policy does not define "reported to." Under Georgia law, "when an insurance policy is couched in terms that are vague or ambiguous, such ambiguity must be construed most strongly against the insurance company . . . and most strongly in favor of the insured." U.S. Fidelity & Guar. Co. v. Boyette, 201 S.E. 2d 660, 665 (Ga. Ct. App. 1973). Second, in bringing a motion for judgment as a matter of law or motion for a new trial, Defendant bears a heavy burden that requires a showing that the jury acted unreasonably or that the verdict was against the clear weight of the evidence.

Ingram's September 27 letter to Simon fails to state in clear terms that Jenifer had made an actual claim. Nonetheless, a reasonable jury hearing the evidence presented at trial could have concluded that it constituted a report under the Policy, given that Ingram stated that he had met with Jenifer, described the facts and law surrounding Jenifer's personal injury lawsuit,

and reported that the circumstances "may be a claim." Moreover, such a finding is not against the "clear weight of the evidence."

**CONCLUSION**

In light of the evidence presented by the parties, a reasonable jury could – and in fact did – find that the Firm complied with the notice and reporting requirements in the Policy, such that the Policy covers the Jenifer malpractice suit against the Firm. Furthermore, the jury's verdict in favor of Plaintiffs is not against the "clear weight of the evidence" and has not resulted in a "miscarriage of justice," as the law requires for a new trial.

For the reasons stated, Clarendon's Renewed Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial is **DENIED**.

**SO ORDERED**, this 13th day of January, 2011.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA